UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WALTON LEMJEIK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED AIRLINES, INC.; and DOES 1-100, inclusive,<br><br>Defendants. | Case No. 2:26-cv-04339<br><br>**DEFENDANT UNITED AIRLINES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**<br><br>**[28 U.S.C. §§ 1332(d), 1441(b) & 1446]**<br><br>Complaint Filed: September 4, 2026 |



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
**(206) 946-4910**

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

PLEASE TAKE NOTICE that Defendant United Airlines, Inc. ("Defendant" or "United") hereby removes this matter to the United States District Court for the Western District of Washington at Seattle, pursuant to 28 U.S.C. §§ 1332(d), 1441(b), and 1446. This Court has original subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453, because minimum diversity exists, there are more than 100 putative class members, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs. In support of this removal, United states the following:

## SUMMARY OF COMPLAINT

1. On September 4, 2026, Plaintiff Walton Lemjeik ("Plaintiff") filed a Complaint in the Superior Court for the State of Washington for King County, Case No. 26-2-29159-4 SEA, entitled *Walton Lemjeik v. United Airlines, Inc., et al.* (the "Complaint"), a true and correct copy of which is attached to this Notice of Removal as **Exhibit 1**.

2. In the Complaint, Plaintiff asserts claims for: (1) failure to provide and pay for rest breaks; (2) failure to provide and pay for meal periods; (3) failure to pay overtime; (4) payment of wages less than entitled; (5) failure to pay all wages due at termination; (6) failure to pay all wages due at established pay periods; and (7) willful refusal to pay wages. *See* Compl.

3. Plaintiff purports to represent a putative class of "[a]ll hourly-paid or non-exempt employees of Defendants in the State of Washington at any time during the period from three years preceding the filing of [the] Complaint to final disposition of this action" (the "Class"). Compl. ¶ 6.1.

4. Plaintiff seeks compensatory damages, exemplary damages, pre-judgment interest, and attorneys' fees and costs. *Id.* at Prayer for Relief.

5. On October 21, 2026, Plaintiff served United with the Complaint, Summons, Case Information Cover Sheet and Area Designation, and Order Setting Civil Case Schedule. A true



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

and correct copy of the service of process documents served on United on October 21, 2026, is attached to this Notice of Removal as **Exhibit 2**.

6. In further support of this Notice of Removal, a completed Civil Cover Sheet is attached as **Exhibit 3**. In addition, both a true and correct copy of the Summons along with all additional records and proceedings in the state court and verification of completeness and a Certificate of Service listing all counsel and pro se parties who have appeared in the action with their contact information (including email addresses) will be promptly filed.

7. In accordance with 28 U.S.C. § 1446(a), Exhibits 1 and 2 and the contemporaneously filed state court record and verification of completeness collectively constitute all process, pleadings, and orders in the state court action that have been served on United as of the date this Notice of Removal was filed.

8. Pursuant to 28 U.S.C. § 1446(d), United will promptly provide written notice of removal of the state court action to Plaintiff and will promptly file a copy of this Notice of Removal with the Clerk of the Superior Court for the State of Washington for King County.

## TIMELINESS OF REMOVAL AND VENUE

9. The deadline to remove a civil action to federal court is thirty days from the date a defendant is served with the Summons and Complaint. *See* 28 U.S.C. § 1446(b). Here, Plaintiff served United with the Summons and Complaint on October 21, 2026, and therefore, the deadline for United to timely remove the state court action is November 20, 2026. *See id.* This Notice of Removal is filed on November 9, 2026, which is less than 30 days after service. Accordingly, United is timely removing this matter within thirty days of the date Plaintiff served the Summons and Complaint.

10. The United States District Court for the Western District of Washington at Seattle is the proper court for removal because Plaintiff originally filed the Complaint in the Superior Court for the State of Washington for King County, which is located within the Western District



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

of Washington, Seattle Division. *See* 28 U.S.C. § 128(b); LCR 3(e). As such, venue is proper in this Court because "it is the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).[1]

**REMOVAL JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT**

11. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) (as amended by the Class Action Fairness Act of 2005, PL 109-2, February 18, 2005, 119 Stat. 14). Under Section 1332(d), federal courts have original diversity jurisdiction over a class action whenever: (1) "any member of a [putative] class of plaintiffs is a citizen of a State different from any defendant," 28 U.S.C. § 1332(d)(2)(A); (2) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," 28 U.S.C. § 1332(d)(2); and (3) "the number of members of all proposed plaintiff classes in the aggregate is" more than 100. 28 U.S.C. § 1332(d)(2), (5)(B).

**Minimal Diversity of Citizenship Exists**

12. Under CAFA, the minimal diversity requirement is satisfied when: (1) any member of a class of plaintiffs is a citizen of a state different from any defendant; (2) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a state; or (3) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state. *See* 28 U.S.C. § 1332(d)(2). "Under CAFA there is sufficient diversity to establish federal diversity jurisdiction so long as one class member has citizenship diverse from that of one defendant." *Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1276 (9th Cir. 2017) (citing 28 U.S.C. § 1332(d)(2)(A)).

[1] United does not concede that Seattle was the proper King County, Washington filing location based on Plaintiff's work location during his employment with United. However, because United agrees there is a proper venue in King County and the Western District of Washington at Seattle is the federal court embracing King County, United contends venue is proper in this Court.



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

13. In the absence of a factual or as-applied challenge, a removing party's "short and plain statement" alleging the parties' citizenship is sufficient to satisfy the burden of pleading minimal diversity under CAFA. *See Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1227 (9th Cir. 2019) (internal citations and quotation marks omitted).

14. A corporation is deemed to be a citizen of the states where it is incorporated and where its principal place of business is located. *See* 28 U.S.C. § 1332(c)(1); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 91 (2010) (a corporation's principal place of business is its "nerve center," which will normally be where it maintains its headquarters). United is incorporated in the State of Delaware and has its principal place of business in Chicago, Illinois. United is therefore a citizen of Delaware and Illinois.

15. The Complaint alleges that Plaintiff is a resident of Washington, making Plaintiff a citizen of Washington. Compl. ¶ 3.1. Additionally, United is informed and believes, and on that basis alleges, that a substantial number of members of the putative class identified in the Complaint are citizens of states other than Delaware or Illinois, including Washington. *See, e.g., id.* ¶ 6.1 (defining putative class members as all qualifying persons who worked for United "in the State of Washington" within approximately the last three years).

16. Accordingly, the minimal diversity requirement is satisfied because Plaintiff and United are citizens of different states, and because other putative plaintiffs in this action and United are citizens of different states. *See* 28 U.S.C. § 1332(d)(2).

**<u>The Putative Class Exceeds 100 Individuals</u>**

17. Under CAFA, the number of putative class members in the aggregate must not be less than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

18. Plaintiff seeks to represent all of United's hourly, non-exempt employees who worked in Washington from September 4, 2023 through the final disposition of this action. Compl. ¶ 6.1.



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

19. The Complaint specifically alleges that "the number of class members is reasonably estimated to be at least several hundred individuals" and that "[t]he Class is so numerous that joinder of all Class Members is neither feasible nor practical." *Id.* ¶ 6.2.

20. Based on the Complaint's allegations, United's interpretation of Plaintiff's definition of the Class, and a review and analysis of its records, United avers that the number of putative class members in the Class Plaintiff seeks to represent exceeds 100 individuals. Based on the above, there are more than 100 class members in Plaintiff's proposed class.

**<u>The Amount in Controversy Exceeds $5,000,000</u>**

21. To remove a class action under CAFA, the total amount in controversy must exceed $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *see also Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022) ("Amount at stake does not mean likely or probable liability; rather, it refers to possible liability.") (internal citation and quotation marks omitted). To satisfy this burden, a defendant may rely on a "chain of reasoning" that is based on "reasonable" assumptions. *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015).

22. Assumptions are reasonable when they are "founded on the allegations of the complaint." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019). And "an assumption is not *unreasonable* simply because another equally valid assumption may exist." *Perez v. Rose Hills Co.*, 131 F.4th 804, 807 (9th Cir. 2025) (emphasis added).

23. In *Perez*, the Ninth Circuit recently analyzed what types of assumptions are "reasonable" for purposes of calculating the amount in controversy for CAFA removal in the context of wage and hour class action complaints with limited specificity regarding the alleged violations. *Id.* at 807-08. The Ninth Circuit found that the defendant's assumption regarding the



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

"violation rate" (*i.e.*, the "frequency with which it allegedly violated the law") was reasonable where the defendant "tethered that assumption to the language in the complaint"—namely, to allegations in the complaint that the defendant had committed the alleged violations "at times" and "throughout the statutory period." *Id.* at 807. Further, "it makes little sense to require a CAFA defendant to introduce evidence of the violation rate—really, the *alleged* violation rate—because the defendant likely believes that the real rate is zero and thus that the evidence does not exist." *Id.* (emphasis in original). "For that reason, a CAFA defendant can most readily ascertain the violation rate by looking at the plaintiff's complaint." *Id.*

24. As they must, courts in the Western District of Washington follow the direction of *Perez*, including to accept the reasonableness of the defendant's assumptions so long as they are based on the language of the complaint. *See Wrightman v. Aramark Campus LLC*, No. C25-2073-KKE, 2026 WL 2071145, at *2-3, 7 (W.D. Wash. July 17, 2026); *Mills v. Saia, Inc.*, No. 26-cv-5033-BHS, 2026 WL 1078226, at *2 (W.D. Wash. Apr. 21, 2026) (citing *Perez* and endorsing the defendant's use of a chain of inferences so long as they are "based on the language of the complaint").

25. Though United concedes neither liability on Plaintiff's claims nor the propriety or breadth of the purported Class as alleged by Plaintiff, the Complaint places in controversy a sum greater than $5,000,000. *See generally* Compl.; *see also* 28 U.S.C. § 1332(d). Plaintiff seeks to recover unpaid wages, compensation for noncompliant meal and rest periods, and attorneys' fees on behalf of himself and each of the purported class members. *See* Compl. ¶¶ 7.1-12.6, Prayer for Relief. Plaintiff further seeks to recover exemplary or double damages for all alleged unpaid wages because he asserts that United's violations of Washington state law were committed willfully. *Id.* ¶¶ 13.1-13.5, Prayer for Relief.



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

26. For purposes of this Notice of Removal and the related calculations demonstrating the satisfaction of the amount in controversy requirement, United relies on the following assumptions based on its review of the Complaint and United's data:[2]

a. Employee Scope: The calculations in this Notice are limited to the approximately 576 employees based in Washington who held ground job positions in approximately the last 3 years based on recently available data (covering a duration shorter than that from September 4, 2023 to the filing of this Notice, which exceeds 38 months).

b. Average Hourly Wage: The average hourly wage of the employees described above during an approximately 3-year time period, using the lower figure of two mathematically sound calculations of the average hourly rate was approximately $35.08.

c. Average Number of Shifts Per Workweek: The average number of shifts per workweek worked by the employees described above during an approximately 3-year time period was approximately 4.13.

d. Number of Workweeks Worked: The employees described above worked approximately 51,561 total workweeks during an approximately 3-year time period.

e. Number of Quarters Worked: The employees described above were employed for approximately 4,717 unique 91-day day periods with at least some time worked during those 91-days.

[2] United's assumptions are drawn conservatively for purposes of this Notice of Removal. If Plaintiff challenges the Court's jurisdiction, United reserves the right to demonstrate an amount in controversy that is greater than the figures used in this Notice by, among other things, offering evidence for "[a]ll hourly-paid or non-exempt employees of Defendants in the State of Washington" rather than only employees based in Washington who held ground job positions, using data through the time of removal, using the actual hourly rates for putative class members, calculating a higher shift count, and considering all theories of damages or entitlement to relief put at issue by the Complaint.



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

f. Shift Data: The employees described above worked approximately 213,050 total shifts during an approximately 3-year time period.[3] Of those shifts, United's data reflects an approximate number of shifts exceeding each duration listed below as follows:

i. 3.0 Hours: 211,772

ii. 5.0 Hours: 181,826

iii. 8.0 Hours: 76,938

iv. 10.0 Hours: 27,859

27. This Notice of Removal draws conservative estimates of the amount in controversy when compared to the full scope of the dispute raised by Plaintiff's Complaint. Specifically, United's calculations in this Notice underestimate the total amount in controversy by:

(1) including in the calculation only United's Washington-based ground employees;

(2) using a more conservative calculation of the average hourly rate than would otherwise be appropriate;

(3) using the base hourly pay rate only for all calculations without consideration of Plaintiff's claims for overtime premiums or any other premium pay;

(4) assuming only a 20% violation rate for the meal and rest break claims despite the breadth of Plaintiff's allegations;

(5) assuming only 20 minutes of off-the-clock work per week (5 minutes per shift for a 4-day workweek) despite the breadth of Plaintiff's allegations and despite a longer average workweek of 4.13 days;

(6) assuming only 7.5 hours of uncompensated quarterly training time despite

---

[3] For purposes of this Notice, "shift" means a calendar day with time worked by a unique employee.



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

Plaintiff's reference to 10 to 15 hours;

(7) excluding valuation of the claim for "time worked" during meal periods; and

(8) excluding Plaintiff's theories of recovery for: (a) overtime wages, Compl. ¶¶ 9.1-9.4, (b) failure to provide complete and accurate wage statements, *id.* ¶ 5.14, and (c) failure to pay "paid time off." *Id.* ¶ 5.16.

28. As set forth more fully below, even using conservative estimates of Plaintiff's alleged damages based on assumptions that are amply supported by the allegations in the Complaint, the threshold of $5,000,000 necessary to establish CAFA jurisdiction is satisfied as follows:[4]

29. <u>First Theory of Relief—Failure to Provide First Meal Periods</u>: Plaintiff's Complaint seeks compensation for first meal period violations. *See, e.g.*, Compl. ¶¶ 8.1-8.10. Relevant here, WAC 296-126-092 provides that: "Employees shall be allowed a meal period of at least thirty minutes which commences no less than two hours nor more than five hours from the beginning of the shift." WAC 296-126-092(1). When an employee is denied a compliant meal period, the remedy is thirty minutes of wages. *E.g.*, *Androckitis v. Virginia Mason Med. Ctr.*, 556 P.3d 714, 722 (Wash. Ct. App. 2024).

30. To start, Plaintiff asserts that a common question in this case is "[w]hether Defendants have engaged in a ***common course*** of failing to provide Plaintiff and the Class Members with a thirty-minute meal period for every five hours of work." Compl. ¶ 6.3(d) (emphasis added). Plaintiff also alleges that throughout his employment, United "***regularly denied*** Plaintiff and Class Members lawful meal periods by, without limitation, interrupting meal

---

[4] In alleging the amount in controversy for purposes of removal, United does not concede nor acknowledge in any way that the allegations in Plaintiff's Complaint are accurate or that Plaintiff or any proposed class member are entitled to any amount under any claim or cause of action. Nor does United concede or acknowledge that any class may be certified, whether as alleged or otherwise, or that any or all its current or former employees are entitled to any recovery in this case or are appropriately included in the putative class.



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

periods; failing to provide timely meal periods; providing short meal periods; requiring on-duty or on-call meal periods; and/or auto-deduction meal periods that could not be auto-deducted under Washington State law or during which employees worked." Compl. ¶ 5.6 (emphasis added). Plaintiff's Complaint does not specifically state the frequency with which any of these violations occurred; however, Plaintiff's allegations taken as a whole make clear that Plaintiff alleges that he and other employees suffered ***multiple and different*** types of meal period violations on a regular basis. *See id.* ¶¶ 5.3, 5.5-5.6, 5.12-5.13, 8.1-8.10 (collectively alleging meal periods that were untimely, short, interrupted, and missed altogether).

31. An assumed violation rate of 20% is more than reasonable where, as here, the complaint is not specific as to frequency and includes broad allegations of noncompliance. In fact, district courts in the Ninth Circuit have found meal break violation rates for purposes of removal ranging from 20% to 60% to be reasonable assumptions when the operative complaint alleges a "uniform" practice or a "pattern and practice" of meal period violations. *See, e.g.*, *Arnold v. Marriott Int'l*, No. 3:24-CV-00221-RAJ, 2025 WL 1919260, at *4 (W.D. Wash. July 11, 2025) (finding that a 20% violation rate was reasonable and noting "[c]ourts in the Ninth Circuit have repeatedly approved of an assumed 20% violation rate for meal and rest period claims where, as here, the plaintiff alleges a 'policy and practice' of violations"); *Brown v. Janus of Santa Cruz*, No. 21-CV-00094-BLF, 2021 WL 3413349, at *5 (N.D. Cal. Aug. 5, 2021) (finding a 50% violation rate was reasonable when plaintiff alleged a "uniform" or "uniformly administered" policy of meal and rest break violations); *Elizarraz v. United Rentals, Inc.*, No. 2:18-CV-09533-ODW (JC), 2019 WL 1553664, at *3 (C.D. Cal. Apr. 9, 2019) (finding a 50% violation rate reasonable when the complaint alleged a "pattern and practice" of meal period and rest break violations); *Alvarez v. Off. Depot, Inc.*, No. CV 17-7220 PSG (AFMx), 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (finding that a 60% violation rate on meal and rest breaks was reasonable when plaintiff alleged a "uniform" practice of meal break violations).



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

32. Based on the foregoing, and using a conservative assumption of just 20% for the violation rate, the amount in controversy by Plaintiff's claim for damages based on United's failure to provide compliant first meal periods is **at least $1,275,691**, which is calculated as follows: 181,826 (shifts longer than five hours) x 20% violation rate x $17.54 owed per meal break violation (0.5 [30 minutes] x $35.08 [average hourly rate]) x 2 for willful conduct.

33. Second Theory of Relief—Failure to Provide Second Meal Periods: Plaintiff additionally alleges that he and other employees were entitled to "a second thirty (30) minute uninterrupted meal period for days on which they worked in excess of ten (10) hours in a work day, yet [Defendants] failed to provide [them] with legally compliant meal periods." Compl. ¶ 5.5.

34. WAC 296-126-092 provides that: "No employee shall be required to work more than five consecutive hours without a meal period." WAC 296-126-092(2). The remedy for each such violation is thirty minutes of wages. *Androckitis*, 556 P.3d at 722.

35. As with Plaintiff's claim for first meal period violations, an assumed violation rate of 20% is reasonable where the complaint is not specific as to frequency and includes broad allegations of noncompliance. Plaintiff does not specifically allege the frequency with which second meal period violations occurred or explain the relative frequency of first and second meal period violations. *See* Compl. ¶¶ 5.5–5.6. However, the Complaint does allege—without reference or limitation to first or second meal periods specifically—that United "***regularly denied*** Plaintiff and Class Members lawful meal periods." *Id.* ¶ 5.6 (emphasis added). Reading the Complaint's allegations together, Plaintiff's broad allegations of "regular" meal period violations can be interpreted to apply to Plaintiff's allegations of second meal period violations as well. *See Perez*, 131 F.4th at 809–10 (permitting reasonable assumptions that find support in the Complaint's language and noting that a plaintiff is free to use more specific language in drafting the complaint).



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

36. The amount in controversy by Plaintiff's claim for damages based on United's failure to provide compliant second meal periods is **at least $195,458** which is calculated as follows: 27,859 (shifts longer than ten hours) x 20% violation rate x $17.54 owed per meal break violation (0.5 [30 minutes] x $35.08 [average hourly rate]) x 2 for willful conduct.

37. Third Theory of Relief—Failure to Provide First Rest Periods: Plaintiff also asserts a claim for relief seeking damages for alleged rest period violations. *See* Compl. ¶¶ 7.1-7.10.

On his rest period claim, Plaintiff alleges that he and other employees "were entitled to receive a full ten-minute, off-duty, paid, and uninterrupted rest break for every four (4) hours worked, and that no employee could be required to work more than three (3) consecutive hours without a rest break" and yet United "failed to authorize and permit Plaintiff and Class Members to take legally compliant rest periods." *Id.* ¶ 5.7. He therefore asserts a violation of WAC 296-126-092(4), which provides that "[n]o employee shall be required to work more than three hours without a rest period."

38. As with his claims for meal period violations, Plaintiff does not specifically allege the frequency with which rest period violations occurred. However, Plaintiff asserts that United "***regularly denied*** Plaintiff and Class Members lawful rest periods." *Id.* ¶ 5.8 (emphasis added). Plaintiff also asserts that a common question in this case is "[w]hether Defendants have engaged in a ***common course*** of failing to provide Plaintiff and the Class Members with a ten-minute rest break for every four hours of work." Compl. ¶ 6.3(c) (emphasis added).

39. An assumed violation rate of 20% is reasonable where, as here, the complaint is not specific as to frequency and includes broad allegations of noncompliance. District courts in the Ninth Circuit have found violation rates ranging from 20% to 60% to be reasonable assumptions when the operative complaint alleges a "uniform" practice or a "pattern and



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

practice" of rest period violations. *See, e.g.*, *Arnold*, 2025 WL 1919260, at *4; *Brown*, 2021 WL 3413349, at *5; *Elizarraz*, 2019 WL 1553664, at *3; *Alvarez*, 2017 WL 5952181, at *3.

40. The amount in controversy by Plaintiff's claim for damages based on United's failure to provide compliant first rest periods is **at least $494,699**, which is calculated as follows: 211,772 (shifts longer than three hours) x 20% violation rate x $5.84 owed per rest break violation (0.166666 [10 minutes] x $35.08 [average hourly rate]) x 2 for willful conduct.

41. <u>Fourth Theory of Relief—Failure to Provide Second Rest Periods</u>: Plaintiff's Complaint also puts in controversy damages sought for second rest period violations. *See* Compl. ¶¶ 5.7, 6.3(c).

42. As described above, Plaintiff broadly alleges that United "failed to authorize and permit Plaintiff and Class Members to take legally compliant rest periods," including by citation to his alleged entitlement to receive a rest break "for every four (4) hours worked." *Id.*; *see also* WAC 296-126-092(4) (stating that "Employees shall be allowed a rest period of not less than ten minutes, on the employer's time, for each four hours of working time"). Plaintiff's Complaint therefore puts an additional amount in controversy for second rest period violations occurring in shifts lasting longer than eight hours.

43. The amount in controversy by Plaintiff's claim for damages based on United's failure to provide compliant second rest periods is **at least $179,727**, which is calculated as follows: 76,938 (shifts longer than eight hours) x 20% violation rate x $5.84 owed per rest break violation (0.166666 [10 minutes] x $35.08 [average hourly rate]) x 2 for willful conduct.

44. <u>Fifth Theory of Relief—Failure to Pay Wages for Off-the-Clock Quarterly Training</u>: Plaintiff also seeks damages for alleged failures to pay Plaintiff and the putative class members wages for all hours worked based on a theory of off-the-clock work, including specifically for alleged off-the-clock training time. *See* Compl. ¶¶ 5.3-5.4, 5.9-5.16.



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

45. Specifically, Plaintiff alleges that he and the putative class are owed additional compensation for all hours worked, because they were "requir[ed] to work off the clock" including because they were required "to complete quarterly training lessons and curriculum classes up to 10 to 15 hours from home." *Id.* ¶ 5.3.

46. Given Plaintiff's allegations, the amount in controversy for alleged off-the-clock training is **at least $2,482,085**, which is calculated as follows: 4,717 (total quarters worked) x $263.10 owed for seven and a half hours of off-the-clock work per quarter (7.5 [which is far less than the allegations of the complaint] x $35.08 [average hourly rate]) x 2 for willful conduct.

47. <u>Sixth Theory of Relief—Failure to Pay Wages for Other Off-the-Clock Work</u>: Plaintiff also seeks damages under his alleged off-the-clock work theory relating to a non-exhaustive category of work performed off the clock other than quarterly training. *See* Compl. ¶ 5.3.

48. Plaintiff alleges that United "maintain[s] a practice and/or policy of failing to track all minutes actually worked" and "failing to pay Plaintiff and Class Members for all minutes worked at the proper rates of pay." *Id.* Specifically, the additional off-the-clock work alleged "includ[es], ***without limitation***," the time Plaintiff and putative class members allegedly spent "undergo[ing] mandatory airport security checkpoints off the clock." *See id.* ¶ 5.3 (emphasis added). The Complaint does not quantify the amount of off-the-clock work performed for these additional categories of unrecorded work time or the frequency with which such work occurred. *See id.*

49. In addition to the allegedly unpaid time for "security checkpoints" and general references to other off-the-clock work, Plaintiff seeks to recover wages for "the "underreport[ed] time" that resulted from employees "being required to report scheduled shift hours rather than actual hours worked when timeclocks were faulty," which he alleges occurred "once or twice a



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

month." *See id.* ¶¶ 5.3-5.4. Plaintiff does not quantify the amount of off-the-clock work that went unreported as a result of this alleged issue. *Id.*

50. As explained above, United is entitled to rely on reasonable assumptions regarding off-the-clock work for which Plaintiff seeks to recover where the Complaint lacks specificity in its allegations." *Perez*, 131 F.4th at 807.

51. The Ninth Circuit has recently made clear that a defendant can assume up to one hour of minimum wages ***and*** one hour of overtime wages when the complaint alleges generic off-the-clock work without specific limitation. *See Perez*, 131 F.4th at 806–07, 809 (approving implicitly the defendant's related assumption as a reasonable one); *Perez v. Rose Hills Co.*, No. 2:24-CV-04827-JLS-PVC, 2025 WL 2631603 (C.D. Cal. Aug. 29, 2025) (finding the defendant's assumptions of one hour of minimum wages ***and*** overtime wages per week to be reasonable). And even before *Perez*, district courts evaluating the amount in controversy for non-specified off-the-clock work have approved reasonable assumptions ranging from 20 minutes to one hour per week to calculate the amount in controversy on allegedly unpaid wages. *See McCluskey v. ESA Mgmt., LLC*, No. C26-1033-SKV, 2026 WL 1827550, at *8 (W.D. Wash. June 25, 2026) (adopting estimate of "30 minutes of off-the-clock work per workweek" for claim of unspecified off-the-clock work performed); *Hill v. Hogan Pers., LLC*, No. EDCV 25-0564 JGB (SHKX), 2025 WL 1898255, at *5 (C.D. Cal. July 9, 2025) (finding assumption of one hour of unpaid time each week to be reasonable where the complaint alleged a policy and practice of nonpayment for unspecified off-the-clock work activities and the defendant's failure to accurately track all time worked); *Cocroft v. EquipmentShare.com Inc.*, No. 24-cv-00645-BAS-AHG, 2024 WL 3877274, at *4 (S.D. Cal. Aug. 19, 2024) (accepting defendant's assumption of daily time owed of five or more minutes, noting the lack of information at the pleading stage from which the precise quantity of unrecorded hours could be ascertained).



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

52. Based on Plaintiff's Complaint alleging a non-exhaustive list of uncredited work activities that includes time spent passing through "mandatory airport security checkpoints," which would logically occur every shift, United assumes for purposes of removal that Plaintiff's off-the-clock work time (other than quarterly training) collectively total 20 total minutes per workweek (or approximately 5 minutes per shift for an average workweek of 4 days (which is lower than the actual workweek figure)). This assumption is conservatively drawn and falls below the assumed off-the-clock work time courts have accepted as reasonable in light of similarly vague allegations in the complaint. *See, e.g.*, *Perez*, 2025 WL 2631603, at *4; *Hill*, 2025 WL 1898255, at *5.

53. Given Plaintiff's allegations, the amount in controversy for alleged off-the-clock work other than quarterly training is **at least $1,205,496**, which is calculated as follows: 51,561 (all workweeks reflecting time worked) x $11.69 owed for twenty minutes of off-the-clock work per workweek (0.333333 [twenty minutes] x $35.08 [average hourly rate]) x 2 for willful conduct.

54. Attorney's Fees: Attorney's fees are properly included in the amount in controversy for purposes of removal. *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794-95 (9th Cir. 2018). In cases like this one, it is generally appropriate to assume 25% of the damages at issue for attorney's fees. *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) (using "25% as a benchmark" for attorney's fees). That is all the more so here where Plaintiff's counsel, Bibiyan Law Group, P.C., regularly seeks more than 25% in attorney's fees in these cases. *See, e.g.*, *Gant v. ALDI, Inc.*, No. LACV1903109JAKPLA, 2021 WL 4050936, at *7 (C.D. Cal. Aug. 25, 2021) (Bibiyan Law Group, P.C. seeking fees in excess of 30% of the settlement fund in a wage and hour class action); *Arellano v. J.M. Smucker Co.*, No. 2:23-CV-1540 WBS DMC, 2026 WL 35762 (E.D. Cal. Jan. 6, 2026) (similar, with Bibiyan Law Group, P.C. seeking 33% in fees). Where Plaintiff's counsel regularly seeks awards of 30%



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

or more in similar cases, it is reasonable to assume here that counsel will seek at least 25% for purposes of calculating the amount in controversy. *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 n.4 (9th Cir. 2020) (holding "it is reasonable to assume that [the plaintiff's] attorney would seek fees equal to 25 percent of the amount in controversy" where the same counsel had sought a 35% fee in a similar case). Accordingly, based on the conservative damages estimates provided above, the attorneys' fees at issue amount to **at least $1,458,289.**[5]

* * *

55. After totaling the amounts in controversy for a subset of the putative class for only a subset of Plaintiff's total damages sought, and accepting all allegations in Plaintiff's Complaint as true for the purposes of this removal petition, there is **at least $7,291,445** at stake. As summarized in the chart below, this dispute exceeds the minimum amount in controversy requirement under CAFA.

| **CLAIM** | **AMOUNT-IN-CONTROVERSY** |
|---|---|
| First Meal Period Violations | $1,275,691 |
| Second Meal Period Violations | $195,458 |
| First Rest Period Violations | $494,699 |
| Second Rest Period Violations | $179,727 |
| Off-the-Clock Quarterly Training | $2,482,085 |
| Other Off-the-Clock Work | $1,205,496 |
| Attorneys' Fees (25%) | $1,458,289 |
| **TOTAL** | **$7,291,445** |

[5] The amount in controversy attributable to attorneys' fees is calculated as follows: $5,833,156 (amount in controversy from the subset of Plaintiff's claims analyzed herein, before attorneys' fees) x .25 (25% multiplier approved by the Ninth Circuit and which is lower than the amount Bibiyan Law Group, P.C. has sought in similar cases) = $1,458,289.



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

## CONCLUSION

WHEREFORE, the above-titled Action is hereby removed to this Court from the Superior Court for the State of Washington for King County.

DATED this 9th day of November, 2026

SEYFARTH SHAW LLP

*/s/Molly Gabel*
Molly Gabel (WSBA No. 47023)

*/s/Michael Tracy*
Michael Tracy (WSBA No. 51226)
SEYFARTH SHAW LLP
999 Third Avenue, Suite 4700
Seattle, WA 98104
Telephone: (206) 946-4910
Email: mgabel@seyfarth.com
mtracy@seyfarth.com

JONES DAY

Aaron Markel*
150 W Jefferson Ave, Ste 2100
Detroit, MI 48226
Telephone: (313) 230-7929
Email: amarkel@jonesday.com

Elizabeth McRee*
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: (312) 269-4374
Email: emcree@jonesday.com

Koree Wooley*
4655 Executive Drive, Suite 1500
San Diego, CA 92121-3134
Telephone: (858) 314-1191
Email: kbwooley@jonesday.com

Attorneys for Defendant
UNITED AIRLINES, INC.

*Application for admission pro hac vice forthcoming

## Index of Exhibits

| Exhibit | Name |
|---|---|
| 1. | Complaint |
| 2. | Documents Served on Defendant on October 21, 2026 |
| 3. | Civil Cover Sheet |



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910